UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| JESSICA YOW,<br><br>                       Plaintiff,<br><br>       v.<br><br>MICHAEL J. ASTRUE. Commissioner of Social Security,<br><br>                       Defendant. | Case No. 3:11-cv-05688-RJB-KLS<br><br>REPORT AND RECOMMENDATION<br><br>Noted for July 27, 2012 |

Plaintiff has brought this matter for judicial review of defendant's denial of her application for supplemental security income ("SSI") benefits. This matter has been referred to the undersigned Magistrate Judge pursuant to 28 U.S.C.§636(b)(1)(B) and Local Rule MJR 4(a)(4) and as authorized by Mathews, Secretary of H.E.W. v. Weber, 423 U.S. 261 (1976). After reviewing the parties' briefs and the remaining record, the undersigned submits the following Report and Recommendation for the Court's review, recommending that for the reasons set forth below, defendant's decision to deny benefits should be reversed and this matter should be remanded for further administrative proceedings.

FACTUAL AND PROCEDURAL HISTORY

On June 6, 2007, plaintiff filed an application for SSI benefits, alleging disability as of February 26, 2007, due to mental health issues. See Administrative Record ("AR") 18, 107, 132. That application was denied upon initial administrative review on November 30, 2007, and on reconsideration and on March 25, 2008. See AR 18, 62, 69. A hearing was held before an

REPORT AND RECOMMENDATION - 1

administrative law judge ("ALJ") on September 22, 2009, at which plaintiff, represented by counsel, appeared and testified, as did a medical expert and a vocational expert. See AR 29-59.

On December 7, 2009, the ALJ issued a decision in which plaintiff was determined to be not disabled. See AR 18-24. Plaintiff's request for review of the ALJ's decision was denied by the Appeals Council on July 28, 2011, making the ALJ's decision defendant's final decision. See AR 1; see also 20 C.F.R. §416.1481. On September 1, 2011, plaintiff filed a complaint in this Court seeking judicial review of the ALJ's decision. See ECF #1-#3. The administrative record was filed with the Court on December 13, 2011. See ECF #13. The parties have completed their briefing, and thus this matter is now ripe for the Court's review.

Plaintiff argues the ALJ's decision should be reversed and remanded to defendant for an award of benefits, because the ALJ erred: (1) in evaluating the medical evidence in the record; (2) in finding plaintiff did not have a mental impairment that met or medically equaled the criteria of any of the impairments contained in 20 C.F.R. Part 404, Subpart P, Appendix 1 (the "Listings"); (3) in discounting her credibility; and (4) in finding her to be capable of performing other jobs existing in significant numbers in the national economy. The undersigned agrees the ALJ erred in determining plaintiff to be not disabled, but for the reasons set forth below, recommends that while defendant's decision should be reversed, this matter should be remanded for further administrative proceedings.

DISCUSSION

This Court must uphold defendant's determination that plaintiff is not disabled if the proper legal standards were applied and there is substantial evidence in the record as a whole to support the determination. See Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to

support a conclusion. See Richardson v. Perales, 402 U.S. 389, 401 (1971); Fife v. Heckler, 767 F.2d 1427, 1429 (9th Cir. 1985). It is more than a scintilla but less than a preponderance. See Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975); Carr v. Sullivan, 772 F. Supp. 522, 524-25 (E.D. Wash. 1991). If the evidence admits of more than one rational interpretation, the Court must uphold defendant's decision. See Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).

I.      The ALJ's Evaluation of the Medical Evidence in the Record

The ALJ is responsible for determining credibility and resolving ambiguities and conflicts in the medical evidence. See Reddick v. Chater, 157 F.3d 715, 722 (9th Cir. 1998). Where the medical evidence in the record is not conclusive, "questions of credibility and resolution of conflicts" are solely the functions of the ALJ. Sample v. Schweiker, 694 F.2d 639, 642 (9th Cir. 1982). In such cases, "the ALJ's conclusion must be upheld." Morgan v. Commissioner of the Social Sec. Admin., 169 F.3d 595, 601 (9th Cir. 1999). Determining whether inconsistencies in the medical evidence "are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount" the opinions of medical experts "falls within this responsibility." Id. at 603.

In resolving questions of credibility and conflicts in the evidence, an ALJ's findings "must be supported by specific, cogent reasons." Reddick, 157 F.3d at 725. The ALJ can do this "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Id. The ALJ also may draw inferences "logically flowing from the evidence." Sample, 694 F.2d at 642. Further, the Court itself may draw "specific and legitimate inferences from the ALJ's opinion." Magallanes v. Bowen, 881 F.2d 747, 755, (9th Cir. 1989).

REPORT AND RECOMMENDATION - 3

The ALJ must provide "clear and convincing" reasons for rejecting the uncontradicted opinion of either a treating or examining physician. Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1996). Even when a treating or examining physician's opinion is contradicted, that opinion "can only be rejected for specific and legitimate reasons that are supported by substantial evidence in the record." Id. at 830-31. However, the ALJ "need not discuss *all* evidence presented" to him or her. Vincent on Behalf of Vincent v. Heckler, 739 F.3d 1393, 1394-95 (9th Cir. 1984) (citation omitted) (emphasis in original). The ALJ must only explain why "significant probative evidence has been rejected." Id.; see also Cotter v. Harris, 642 F.2d 700, 706-07 (3rd Cir. 1981); Garfield v. Schweiker, 732 F.2d 605, 610 (7th Cir. 1984).

In general, more weight is given to a treating physician's opinion than to the opinions of those who do not treat the claimant. See Lester, 81 F.3d at 830. On the other hand, an ALJ need not accept the opinion of a treating physician, "if that opinion is brief, conclusory, and inadequately supported by clinical findings" or "by the record as a whole." Batson v. Commissioner of Social Sec. Admin., 359 F.3d 1190, 1195 (9th Cir. 2004); see also Thomas v. Barnhart, 278 F.3d 947, 957 (9th Cir. 2002); Tonapetyan v. Halter, 242 F.3d 1144, 1149 (9th Cir. 2001). An examining physician's opinion is "entitled to greater weight than the opinion of a nonexamining physician." Lester, 81 F.3d at 830-31. A non-examining physician's opinion may constitute substantial evidence if "it is consistent with other independent evidence in the record." Id. at 830-31; Tonapetyan, 242 F.3d at 1149.

In his decision, the ALJ found in relevant part as follows:

> The claimant underwent a mental examination on September 25, 2008[, performed by Brett C. Trowbridge, Ph.D.]. The claimant was not currently in treatment. She had a history of psychiatric hospitalization in February 2007 (Exhibit 3F). The claimant had diagnoses of a psychotic disorder NOS and anxiety disorder NOS. [Dr. Trowbridge] found marked and severe limitations (Exhibit 10F). The claimant underwent another mental examination on

REPORT AND RECOMMENDATION - 4

> August 17, 2009[, performed by Daniel M. Neims, Psy.D]. The claimant had a diagnosis of major depression. [Dr. Neims] found the claimant had mild to marked limitations (Exhibit 13F). However, Dr. [Robert] Bo[urlet, the medical expert who appeared at the hearing,] testified that he disagreed with these assessments. He stated that the claimant has a history of noncompliance with treatment. He stated that with treatment the claimant should be able to do simple and detailed work. A medical condition that can be remedied by surgery or medication is not disabling. The failure to follow a recommended course of treatment which results in a self-inflicted impairment or an exacerbation of an existing impairment militates against the claimant's credibility as well as a finding of disability.

AR 22. Plaintiff argues the ALJ erred in relying on Dr. Bourlet's testimony to reject the opinions of Dr. Trowbridge and Dr. Neims. The undersigned agrees.

Failure to assert a good reason for not following a prescribed course of treatment can be a proper basis for discounting a claimant's credibility regarding his or her allegation of a disabling impairment. See Fair v. Bowen, 885 F.2d 597, 603 (9th Cir. 1989). On the other hand, an ALJ "must not draw any inferences" about a claimant's impairment and its functional effects from such a failure, "without first considering any explanations" that the claimant "may provide, or other information in the case record, that may explain" it. Social Security Ruling ("SSR") 96-7p, 1996 WL 374186 *7. Indeed, "*before* basing a denial of benefits on noncompliance," the ALJ first "must 'examine the medical conditions and personal factors that bear on whether [the claimant] can reasonably remedy' his [or her] impairment." Byrnes v. Shalala, 60 F.3d 639, 641 (9th Cir. 1995) (citations omitted) (emphasis added).

The ALJ did not do so in this case. The record contains strong evidence that plaintiff's periods of noncompliance were due in large part to the effects of her mental impairments, more specifically her impaired thought processes, poor decision-making and lack of insight in regard to those impairments and their impact on her ability to function. See AR 184, 197-99, 206, 223-25, 232, 234, 241-42, 245, 249, 257, 261, 264, 270-72, 277, 306, 311, 358, 381, 431, 433-49,

REPORT AND RECOMMENDATION - 5

451, 453, 455-57.  The ALJ, however, failed to discuss this at all.  Nor does it appear the ALJ considered Dr. Bourlet's testimony in its entirety, which calls into question the propriety of the ALJ's reliance thereon to find plaintiff not disabled.

For example, at the beginning of his testimony, Dr. Bourlet provided an assessment of plaintiff's mental functional capabilities – upon which, as discussed in greater detail below, the ALJ relied to find plaintiff not disabled – based in part on his belief that she had experienced no episodes of decompensation subsequent to her initial hospitalization in March 2007.  See AR 38-41.  It seems Dr. Bourlet was not aware of plaintiff's subsequent period of decompensation and consequent re-hospitalization in November 2008, until the evidence thereof was pointed out to him by plaintiff's attorney, upon which Dr. Bourlet testified that he "wouldn't disagree" that she "has had a couple of periods of decompensation."  See AR 41-44, 55.  Upon further questioning, Dr. Bourlet testified as well that "[t]he feeling" he got from viewing the medical evidence in the record was that plaintiff "decompensates when she quits taking her medication," and that "if a claimant lacks insight into the nature of [his or her] condition then it's going to be very difficult for [him or her] to comply with treatment recommendations."  AR 56-57.

Given the above evidence of lack of insight on plaintiff's part resulting in her being non-compliant with recommended treatment, and Dr. Bourlet's admission that "it's going to be very difficult for" claimants lacking insight "to comply with treatment recommendations," it appears plaintiff's non-compliance may have been largely due to her mental health condition.  The ALJ's failure to consider this fact in rejecting the opinions of Dr. Trowbridge and Dr. Neims – and in determining plaintiff to be not disabled – because she has not been compliant with recommended treatment, therefore, constitutes reversible error.

REPORT AND RECOMMENDATION - 6

II.     The ALJ's Step Three Determination

Defendant employs a five-step "sequential evaluation process" to determine whether a claimant is disabled. See 20 C.F.R.§404.1520; 20 C.F.R.§416.920.  If the claimant is found disabled or not disabled at any particular step thereof, the disability determination is made at that step, and the sequential evaluation process ends. See id.  At step three of the sequential disability evaluation process, the ALJ must evaluate the claimant's impairments to see if they meet or medically equal any of the impairments listed in 20 C.F. R. Part 404, Subpart P, Appendix 1 (the "Listings"). See 20 C.F.R§416.920(d); Tackett v. Apfel, 180 F.3d 1094, 1098 (9th Cir. 1999).  If any of the claimant's impairments meet or medically equal a listed impairment, he or she is deemed disabled. Id.  The burden of proof is on the claimant to establish he or she meets or equals any of the impairments in the Listings. See Tacket, 180 F.3d at 1098.

"A generalized assertion of functional problems," however, "is not enough to establish disability at step three." Id. at 1100 (citing 20 C.F.R.§404.1526).  Rather, a mental or physical impairment "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R.§ 404.1508,§416.908.  It must be established by medical evidence "consisting of signs, symptoms, and laboratory findings." Id.; see also Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 *2 (determination that is conducted at step three must be made on basis of medical factors alone).  An impairment will be found to meet a listed impairment "only when it manifests the specific findings described in the set of medical criteria for that listed impairment." SSR 83-19, 1983 WL 31248 *2.

An impairment, or combination of impairments, equals a listed impairment "only if the medical findings (defined as a set of symptoms, signs, and laboratory findings) are at least

REPORT AND RECOMMENDATION - 7

equivalent in severity to the set of medical findings for the listed impairment." Id.; see also Sullivan v. Zebley, 493 U.S. 521, 531 (1990) ("For a claimant to qualify for benefits by showing that his unlisted impairment, or combination of impairments, is 'equivalent' to a listed impairment, he must present medical findings equal in severity to *all* the criteria for the one most similar listed impairment.") (emphasis in original).  However, "symptoms alone" will not justify a finding of equivalence. Id.  The ALJ also "is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence." Burch v. Barnhart, 400 F.3d 676 (9th Cir. 2005).

The ALJ, furthermore, need not "state why a claimant failed to satisfy every different section of the listing of impairments." Gonzalez v. Sullivan, 914 F.2d 1197, 1201 (9th Cir. 1990) (finding ALJ did not err in failing to state what evidence supported conclusion that, or discuss why, claimant's impairments did not meet or exceed Listings).  This is particularly true where, as noted above, the claimant has failed to set forth any reasons as to why the Listing criteria have been met or equaled. Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001) (finding ALJ's failure to discuss combined effect of claimant's impairments was not error, noting claimant offered no theory as to how, or point to any evidence to show, his impairments combined to equal a listed impairment).

At step three in this case, the ALJ found that none of plaintiff's impairments met or medically equaled any impairment contained in the Listings, including Listing 12.04 (dealing with affective disorders), based on the testimony of Dr. Bourlet. See AR 20-21.  Plaintiff argues her "history of multiple acute episodes of psychotic symptoms resulting in multiple periods of inpatient psychiatric treatment" amounts to a "pattern of periodic decompensation," which is

REPORT AND RECOMMENDATION - 8

"consistent with Listing-level severity." ECF #15, p. 15. Although plaintiff does not mention a specific Listing, the undersigned assumes she means Listing 12.04 here. That Listing reads as follows:

> 12.04 Affective Disorders: Characterized by a disturbance of mood, accompanied by a full or partial manic or depressive syndrome. Mood refers to a prolonged emotion that colors the whole psychic life; it generally involves either depression or elation.
>
> The required level of severity for these disorders is met when the requirements in both A and B are satisfied, or when the requirements in C are satisfied.
>
> A. Medically documented persistence, either continuous or intermittent, of one of the following:
>
> 1. Depressive syndrome characterized by at least four of the following:
>
> a. Anhedonia or pervasive loss of interest in almost all activities; or
>
> b. Appetite disturbance with change in weight; or
>
> c. Sleep disturbance; or
>
> d. Psychomotor agitation or retardation; or
>
> e. Decreased energy; or
>
> f. Feelings of guilt or worthlessness; or
>
> g. Difficulty concentrating or thinking; or
>
> h. Thoughts of suicide; or
>
> i. Hallucinations, delusions or paranoid thinking; or
>
> 2. Manic syndrome characterized by at least three of the following:
>
> a. Hyperactivity; or
>
> b. Pressure of speech; or
>
> c. Flight of ideas; or
>
> d. Inflated self-esteem; or

REPORT AND RECOMMENDATION - 9

e. Decreased need for sleep; or

f. Easy distractibility; or

g. Involvement in activities that have a high probability of painful consequences which are not recognized; or

h. Hallucinations, delusions or paranoid thinking;

Or

3. Bipolar syndrome with a history of episodic periods manifested by the full symptomatic picture of both manic and depressive syndromes (and currently characterized by either or both syndromes);

And

B. Resulting in at least two of the following:

1. Marked restriction of activities of daily living; or

2. Marked difficulties in maintaining social functioning; or

3. Marked difficulties in maintaining concentration, persistence, or pace; or

4. Repeated episodes of decompensation, each of extended duration;

Or

C. Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:

1. Repeated episodes of decompensation, each of extended duration; or

2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or

3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement.

20 C.F.R. Pt. 404, Subpt. P, App. 1, §12.04.

REPORT AND RECOMMENDATION - 10

At the hearing, Dr. Bourlet testified that plaintiff met the criteria of Listing 12.04A. See AR 38.  In terms of the Listing 12.04B criteria, Dr. Bourlet testified that she was mildly limited in her activities of daily living, moderately limited in her social functioning and moderately limited in her concentration, persistence and pace, and that she had "[n]o recent episodes of decompensation." Id.  Dr. Bourlet further testified that there was "no evidence that she would satisfy the C criteria" of Listing 12.04. Id.  As discussed above, the ALJ erred in relying on Dr. Bourlet's testimony to reject the opinions of Dr. Trowbridge and Dr. Neims.  For the same reasons, that testimony cannot be relied for purposes of step three as well.

Nonetheless, the undersigned disagrees with plaintiff that the evidence contained in the record necessarily supports a finding of listing-level severity.  Plaintiff has not established that she has a marked limitation in the areas of daily activities, social functioning and concentration, persistence and pace.  Plaintiff points to the opinions of Drs. Trowbridge and Niems as evidence that she is markedly limited in the latter two categories, but neither medical source noted marked limitations in all the areas of social functioning listed on the evaluation reports they completed, and Dr. Niems noted marked limitations in only a few areas of concentration, persistence and pace. See AR 329, 471, 490-92.  In addition, evidence from other medical sources in the record would appear to contradict some or all of their findings. See AR 278-81, 293.

In terms of Listing 12.04B.4 and Listing 12.04C.1, furthermore, "[t]he term repeated episodes of decompensation, each of extended duration . . . means three episodes within 1 year, or an average of once every 4 months, each lasting for at least 2 weeks."[1] 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00C.4.  Plaintiff argues the record shows she experienced an episode of decompensation of extended duration in late February to early March 2007, and then once more

---

[1] Plaintiff does not argue, nor has she presented any evidence to show, her mental impairments meet or medically equal Listing 12.04C.2 or Listing 12.04C.3.

REPORT AND RECOMMENDATION - 11

in late October 2008, to early November 2008. See ECF #15, p. 15 (citing AR 182-89, 428-49). Those episodes, however, occurred more than a year apart. In addition, although as plaintiff also notes, new evidence submitted to the Appeals Council showed she had another such episode in late February 2011, to early March 2011 (see id. citing AR 520-52), this episode occurred more than two years after the previous one.[2]

At least one medical source in the record besides Dr. Bourlet, furthermore, has opined that the Listing 12.04 criteria have not been met or medically equaled in this case. See AR 293-94. Accordingly, plaintiff has not established yet that she is entitled to a finding of disability at step three. On the other hand, because the ALJ did err, as discussed above, in evaluating the opinions of Dr. Trowbrige and Dr. Neims, it is not entirely clear that the evidence in the record does not support a finding of listing-level severity based on marked limitations in the categories of social functioning and concentration, persistence and pace. Accordingly, it also is not entirely clear that the ALJ's step three finding was free of error, warranting re-consideration of this issue on remand in light of the above medical evidence.

III.     The ALJ's Assessment of Plaintiff's Credibility

Questions of credibility are solely within the control of the ALJ. See Sample, 694 F.2d at 642. The Court should not "second-guess" this credibility determination. Allen, 749 F.2d at 580. In addition, the Court may not reverse a credibility determination where that determination is based on contradictory or ambiguous evidence. See id. at 579. That some of the reasons for discrediting a claimant's testimony should properly be discounted does not render the ALJ's

---

[2] New evidence submitted to the Appeals Council may be considered in determining whether the ALJ's decision is supported by substantial evidence. See Ramirez v. Shalala, 8 F.3d 1449, 1451-52 (9th Cir. 1993); Harman v. Apfel, 211 F.3d 1172, 1180 (9th Cir. 2000) (additional materials submitted to Appeals Council properly may be considered); Gomez v. Chater, 74 F.3d 967, 971 (9th Cir. 1996) (evidence submitted to Appeals Council is part of record on review to federal court).

REPORT AND RECOMMENDATION - 12

determination invalid, as long as that determination is supported by substantial evidence. Tonapetyan , 242 F.3d at 1148.

To reject a claimant's subjective complaints, the ALJ must provide "specific, cogent reasons for the disbelief." Lester, 81 F.3d at 834 (citation omitted). The ALJ "must identify what testimony is not credible and what evidence undermines the claimant's complaints." Id.; see also Dodrill v. Shalala, 12 F.3d 915, 918 (9th Cir. 1993). Unless affirmative evidence shows the claimant is malingering, the ALJ's reasons for rejecting the claimant's testimony must be "clear and convincing." Lester, 81 F.2d at 834. The evidence as a whole must support a finding of malingering. See O'Donnell v. Barnhart, 318 F.3d 811, 818 (8th Cir. 2003).

In determining a claimant's credibility, the ALJ may consider "ordinary techniques of credibility evaluation," such as reputation for lying, prior inconsistent statements concerning symptoms, and other testimony that "appears less than candid." Smolen v. Chater, 80 F.3d 1273, 1284 (9th Cir. 1996). The ALJ also may consider a claimant's work record and observations of physicians and other third parties regarding the nature, onset, duration, and frequency of symptoms. See id.

As noted above, the ALJ discounted plaintiff's credulity in part on the basis of her failure to follow recommended treatment, which can be a valid reason for casting doubt on the sincerity of a claimant's testimony. See AR 22; Fair, 885 F.2d at 603. As discussed above, though, the ALJ erred in doing so by not considering evidence in the record that plaintiff's failure to comply could very well have been due to her mental health condition, and more specifically to her lack of insight into that condition. The ALJ also appears to have discounted plaintiff's credibility in part because the objective medical evidence did not support her subjective complaints. While it is true that a determination that such complaints are "inconsistent with clinical observations" can

REPORT AND RECOMMENDATION - 13

satisfy the clear and convincing requirement, again as discussed above the ALJ's errors in evaluating that evidence makes this stated reason invalid as well. Regennitter v. Commissioner of SSA, 166 F.3d 1294, 1297 (9th Cir. 1998).

The third and final reason the ALJ gave for discounting plaintiff's credibility was because of the nature of her activities of daily living. More specifically, the ALJ found:

> The claimant has a relatively full range of activities of daily living. She takes care of her daughter. She takes her to the school bus stop. She watches TV during the day. She cooks meals. She worked taking care of a teenager in 2007. . . .

AR 23. The Ninth Circuit has recognized "two grounds for using daily activities to form the basis of an adverse credibility determination." Orn v. Astrue, 495 F.3d 625, 639 (9th Cir. 2007). First, such activities can "meet the threshold for transferable work skills." Id. Thus, a claimant's credibility may be discounted if he or she "is able to spend a substantial part of his or her day performing household chores or other activities that are transferable to a work setting." Smolen, 80 F.3d at 1284 n.7.

The claimant, however, need not be "utterly incapacitated" to be eligible for disability benefits, and "many home activities may not be easily transferable to a work environment." Id. In addition, the Ninth Circuit has "recognized that disability claimants should not be penalized for attempting to lead normal lives in the face of their limitations." Reddick, 157 F.3d at 722. Under the second ground in Orn, a claimant's activities of daily living can "contradict his [or her] other testimony." Id.

The evidence in the record fails to show plaintiff has engaged in household chores for a substantial part of her day or in other activities that are transferrable to a work setting, nor does that evidence necessarily contradict her other testimony. See AR 34-35, 113-17, 149-53, 170, 197, 425, 474. Plaintiff did report to one medical source that she generally spent "much of her

REPORT AND RECOMMENDATION - 14

time working in child care . . . for a family of a child with Down's syndrome." AR 276. At the hearing, however, plaintiff testified that this job was at night and that she "basically . . . just had to make sure [the child] got to bed and then wake her up in the morning to got [sic] to school." AR 36. Accordingly, the undersigned finds none of the ALJ's stated reasons for finding plaintiff to be not fully credible were valid.

IV.     The ALJ's Findings at Step Four

If a disability determination "cannot be made on the basis of medical factors alone at step three of the evaluation process," the ALJ must identify the claimant's "functional limitations and restrictions" and assess his or her "remaining capacities for work-related activities." SSR 96-8p, 1996 WL 374184 *2. A claimant's residual functional capacity ("RFC") assessment is used at step four to determine whether he or she can do his or her past relevant work, and at step five to determine whether he or she can do other work. See id. It thus is what the claimant "can still do despite his or her limitations." Id.

A claimant's residual functional capacity is the maximum amount of work the claimant is able to perform based on all of the relevant evidence in the record. See id. However, an inability to work must result from the claimant's "physical or mental impairment(s)." Id. Thus, the ALJ must consider only those limitations and restrictions "attributable to medically determinable impairments." Id. In assessing a claimant's RFC, the ALJ also is required to discuss why the claimant's "symptom-related functional limitations and restrictions can or cannot reasonably be accepted as consistent with the medical or other evidence." Id. at *7.

The ALJ in this case found plaintiff had the residual functional capacity:

> **. . . to perform medium work . . . with the mental abilities of fair: understand and remember short, simple instructions; carry out short, simple instructions; make judgments on simple work related decisions; interact appropriately with supervisors and coworkers; respond**

REPORT AND RECOMMENDATION - 15

**appropriately to changes in a routine work setting poor: interact appropriately with the public none: understand, remember, and carry out complex job instructions.**

AR 21 (emphasis in original). At step four of the sequential disability evaluation process, the ALJ found plaintiff to be capable of performing her past relevant work as a child care attendant based on the above residual functional capacity and the testimony of both Dr. Bourlet and the vocational expert. See AR 23, 38-40, 47. Plaintiff argues the ALJ erred in so finding. She has the burden at step four to show she is unable to return to her past relevant work. Tackett v. Apfel, 180 F.3d 1094, 1098-99 (9th Cir. 1999). The undersigned agrees the ALJ erred here. Given that the ALJ, as discussed above, failed to properly evaluate the medical evidence in the record, it is far from clear his assessment of plaintiff's residual functional capacity is entirely accurate. Accordingly, it also is far from clear that the ALJ's step four determination is valid given that it is based on that RFC assessment.

Plaintiff further argues she should be found to be incapable of performing any other work and thus disabled on that basis, in light of the opinions of Dr. Trowbridge and Dr. Neims, as well as the additional testimony of the vocational expert at the hearing. Specifically the vocational expert testified that if an individual had difficulty "one to two hours out of an eight hour work day or five to ten hours out of a typical forty hour work week because of psychological problems," he or she "would not be able to perform the expected work in an average fashion," and thus would not be "a competitive worker." AR 51. But neither Dr. Trowbride nor Dr. Neims actually opined that plaintiff was so restricted, although, as discussed above, they both noted other significant limitations. See AR 329, 471, 490-92. Nor does plaintiff point to any other medical opinion source evidence in the record that supports such a disabling restriction. As such, the ALJ was not required to accept the vocational expert's additional testimony on this

REPORT AND RECOMMENDATION - 16

issue or adopt that restriction.

The vocational expert further testified that "if a worker required a supervisor to spend up to two hours of an eight hour work shift or ten hours out of a typical work week, the supervisor had to be dealing with one employee, that is not a description of a competitive employee." AR 51-52. Again, though, plaintiff has failed come forth with evidence showing a medical opinion source in the record actually has found her to be limited in this way. Thus, here too the ALJ had no obligation to accept this additional testimony of the vocational expert or adopt the limitations testified to thereby. The ALJ, therefore, also did not have to find plaintiff disabled from all work on these bases.

V.      This Matter Should Be Remanded for Further Administrative Proceedings

The Court may remand this case "either for additional evidence and findings or to award benefits." Smolen, 80 F.3d at 1292. Generally, when the Court reverses an ALJ's decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." Benecke v. Barnhart, 379 F.3d 587, 595 (9th Cir. 2004) (citations omitted). Thus, it is "the unusual case in which it is clear from the record that the claimant is unable to perform gainful employment in the national economy," that "remand for an immediate award of benefits is appropriate." Id.

Benefits may be awarded where "the record has been fully developed" and "further administrative proceedings would serve no useful purpose." Smolen, 80 F.3d at 1292; Holohan v. Massanari, 246 F.3d 1195, 1210 (9th Cir. 2001). Specifically, benefits should be awarded where:

> (1) the ALJ has failed to provide legally sufficient reasons for rejecting [the claimant's] evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the

REPORT AND RECOMMENDATION - 17

record that the ALJ would be required to find the claimant disabled were such evidence credited.

Smolen, 80 F.3d 1273 at 1292; McCartey v. Massanari, 298 F.3d 1072, 1076-77 (9th Cir. 2002). Because issues still remain in regard to the medical evidence in the record, plaintiff's residual functional capacity and her ability to perform her past relevant work, remand for further administrative proceedings is appropriate. Further, if on remand plaintiff is found to be incapable of performing her past relevant work, then defendant should proceed to step five of the sequential disability evaluation process to determine if she is capable of performing other jobs existing in significant numbers in the national economy.

## CONCLUSION

Based on the foregoing discussion, the undersigned recommends the Court find the ALJ improperly concluded plaintiff was not disabled. Accordingly, the undersigned recommends as well that the Court reverse the ALJ's decision and remand this matter to defendant for further administrative proceedings in accordance with the findings contained herein.

Pursuant to 28 U.S.C.§636(b)(1) and Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 72(b), the parties shall have **fourteen (14) days** from service of this Report and Recommendation to file written objections thereto. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. See Thomas v. Arn, 474 U.S. 140 (1985). Accommodating the time limit imposed by Fed. R. Civ. P. 72(b), the clerk is directed set this matter for consideration on **July 27, 2012**, as noted in the caption.

DATED this 13th day of July, 2012.

*Karen L. Strombom*
Karen L. Strombom
United States Magistrate Judge

REPORT AND RECOMMENDATION - 18